WARREN METLITZKY (CA Bar No. 220758)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: wmetlitzky@conmetkane.com

BETH A. STEWART (*pro hac vice* pending)
DAVID RANDALL J. RISKIN (*pro hac vice* pending)
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, DC 20024
Tel:    (202) 434-5000
Fax:    (202) 434-5029
Email:  bstewart@wc.com
Email:  driskin@wc.com

*Attorneys for Lyft, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| TABATHA MEANS,<br><br>Plaintiff<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 3:24-cv-00177-MMC<br><br>**LYFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 12(b)(6), 9(b)]**<br><br>Complaint filed:  January 10, 2024<br><br>Date:    April 19, 2024<br>Time:   9:00 AM<br>Place:  San Francisco Courthouse<br>            Courtroom 7, 19th Floor<br><br>Judge: Hon. Maxine M. Chesney |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ............................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

BACKGROUND ALLEGATIONS ............................................................................. 3

ARGUMENT .......................................................................................................... 3

I.      ALL BUT PLAINTIFF'S CONTRACT CLAIM ARE UNTIMELY ....................................... 3

    A.      California Borrows Florida's Four-Year Period to Bar Plaintiff's Negligence-Based, Vicarious-Liability, Misrepresentation, and Products-Liability Claims. .......... 4

    B.      In the Alternative, California's Two- and Three-Year Periods Bar Plaintiff's Negligence-Based, Misrepresentation, and Products-Liability Claims. ...................... 5

    C.      No Discovery or Equitable Doctrines Save Plaintiff's Untimely Claims.................... 9

II.     PLAINTIFF'S COMMON-CARRIER AND VICARIOUS-LIABILITY THEORIES FAIL UNDER GOVERNING FLORIDA LAW .................................................. 12

    A.      Lyft Cannot Be Liable as a Common Carrier. .......................................... 13

    B.      Lyft Is Not Vicariously Liable for the Diver's Criminal Conduct............................ 14

III.    THE HIRING, MISREPRESENTATION, AND CONTRACT CLAIMS FAIL................. 15

    A.      The Negligent-Hiring Claim Founders on the Absence of Any "Red Flags."........... 15

    B.      Plaintiff Has Not Alleged Any Actionable Misrepresentations................................ 17

    C.      Plaintiff Has Not Alleged Any Contract or Breach. ................................................ 19

CONCLUSION.................................................................................................... 20

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ahern v. Apple Inc.*, 411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................19

*Albano v. Shea Homes Ltd. Partnership*, 634 F.3d 524 (9th Cir. 2011)........................................4

*Arno v. Club Med Inc.*, 22 F.3d 1464 (9th Cir. 1994)..................................................................13

*Acevedo v. eXp Realty, LLC*, 2024 WL 650189 (C.D. Cal. Jan. 29, 2024) ..................................8

*Bettles v. Toyota Motor Corp.*, 645 F. Supp. 3d 978 (C.D. Cal. Dec. 13, 2022)..........................11

*Brackett v. American Airlines Group Inc.*, 2021 WL 3514012 (N.D. Cal. Aug. 10, 2021) ..........19

*Brown v. Bank of America, N.A.*, 2018 WL 6164288 (C.D. Cal. Aug. 2, 2018) ..........................18

*Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017)...............19

*Burr v. Philip Morris USA, Inc.*, 2012 WL 5290164 (M.D. Fla. Sept. 28, 2012) ........................10

*Cassirer v. Thyssen-Bornemisza Collection Foundation*, 89 F.4th 1226 (9th Cir. 2024) .............12

*Chinacast Education Corp. v. Zhuoguo Chen*, 727 F. App'x 394 (9th Cir. 2018)..........................4

*Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287 (M.D. Fla. 2010) ...................18

*Cooper v. Tokyo Electirc Power Co. Holdings, Inc.*, 960 F.3d 549 (9th Cir. 2020) ....................12

*Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156 (N.D. Cal. 2021) .....................................18, 19

*Cruz v. American Security Insurance Co.*, 2016 WL 5791245 (M.D. Fla. Oct. 4, 2016) .............10

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) ............................................................5, 6

*Doe 1 v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016) ...................................16

*Doe v. Willis*, 2023 WL 2799747 (M.D. Fla. Apr. 5, 2023) .......................................................14

*Euwema v. Osceloa County*, 2021 WL 2823448 (M.D. Fla. Apr. 12, 2021)................................16

*Fusco v. Uber Technologies, Inc.*, 2018 WL 3618232 (E.D. Pa. July 27, 2018) .........................16

*G & G Productions, LLC v. Rusic*, 2019 WL 2996498 (C.D. Cal. June 10, 2019) ....................4, 5

*G & G Productions LLC v. Rusic*, 902 F.3d 940 (9th Cir. 2018) ..................................................9

*Gibson v. NCL (Bahamas) Ltd.*, 2012 WL 1952667 (S.D. Fla. May 30, 2012) ...........................19

*Grant v. NFL Players Association*, 2011 WL 11733656 (C.D. Cal. Sept. 19, 2011)......................6

*Hammer v. Lee Memorial Health System*, 2018 WL 3707832 (M.D. Fla. Aug. 3, 2018)..............15

*Heard v. Publix Supermarkets Inc.*, 808 F. App'x 904 (11th Cir. 2020).........................................5

1  *Hexcel Corp. v. Ineos Polymers*, 681 F.3d 1055 (9th Cir. 2012)...........................................10, 11

2  *In re Lyft Inc. Securities Litigation*, 484 F. Supp. 3d 758 (N.D. Cal. 2020)..................................19

3  *Korman v. Iglesias*, 825 F. Supp. 1010 (S.D. Fla. 1993) ................................................................9

4  *Kremers v. Joseph Glenn Commodities, LLC*, 2012 WL 12855571 (S.D. Fla. Dec. 4, 2012) ......18

5  *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829 (11th Cir. 2013) ...............................18

6  *Muse Brands, LLC v. Gentil*, 2015 WL 4572975 (N.D. Cal. July 29, 2015)................................18

7  *Nelson v. International Paint Co.*, 716 F.2d 640 (9th Cir. 1983) ....................................................6

8  *Padilla v. Porsche Cars North America, Inc.*, 2020 WL 1472301 (S.D. Fla. Mar. 26, 2020) ......11

9  *Rivera v. Aaron Rents, Inc.*, 2008 WL 638353 (M.D. Fla. 2008)...................................................15

10  *Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720 (N.D. Cal. 2019) ....................................6

11  *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868 (N.D. Cal. 2015) ..................................................10

12  *Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC*,

13     733 F.3d 1251 (9th Cir. 2013) ...........................................................................................4

14  *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)..........................................................................4, 5

15  *Speier-Roche v. Volkswagen Group of America, Inc.*,

16     2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) ........................................................................11

17  *Target Technology Co. v. Williams Advanced Materials, Inc.*,

18     2008 WL 5002935 (C.D. Cal. Nov. 21, 2008)........................................................................6

19  *Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269 (S.D. Fla. 2013) ...................15, 17

20  *Vinayagam v. Pierce*, 2023 WL 5748496 (N.D. Cal. Feb. 7, 2023).................................................6

21  *Wheeler v. City of Santa Clara*, 894 F.3d 1046 (9th Cir. 2018) .....................................................7

22  *Williams v. Home Advantage Humana*, 2023 WL 4104520 (M.D. Fla. May 31, 2023) ................5

23  *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................18

24  *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010)........................................11

25  *Z.M.L. v. D.R. Horton, Inc.*, 2021 WL 3501099 (M.D. Fla. June 11, 2021) ................................14

26  *Zurich American Insurance Co. v. Kwan Wo Ironworks Inc.*,

27     2022 WL 2981821 (N.D. Cal. July 28, 2022)..........................................................................6

28

**STATE CASES**

*Ashland Chemical Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982) .........................................6

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021).........................................................................15

*Buettner v. Cellular One, Inc.*, 700 So. 2d 48 (Fla. Dist. Ct. App. 1997).....................................5

*Burmakova v. Uber Technologies, Inc.*,

    2021 Cal. Super. LEXIS 96610 (Super. Ct. L.A. Cty. Oct. 22, 2021)....................................14

*Cansino v. Bank of America*, 224 Cal. App. 4th 1462 (2014) .................................................17, 19

*Carter v. Lowe's Home Centers, Inc.*, 954 So. 2d 734 (Fla. Dist. Ct. App. 2007) .......................10

*Castro v. Budget Rent-A-Car System, Inc.*, 154 Cal. App. 4th 1162 (2007) ................................12

*Chen v. Los Angeles Truck Centers, LLC*, 42 Cal. App. 5th 488 (2019)......................................13

*Debbie Reynolds Professional Rehearsal Studios v. Superior Court*,

    25 Cal. App. 4th 222 (1994) ...................................................................................................8

*Doe v. Capital Cities*, 50 Cal. App. 4th 1038 (1996).........................................................15, 16, 17

*Doe v. Lyft, Inc.*, 176 N.E.3d 863 (Ill. App. Ct. 2020)..................................................................14

*Doe v. Lyft, Inc.*, No. RG19015895 (Cal. Super. Ct. Alameda Cty. Oct. 2, 2019) .......................17

*Flores v. Lyft, Inc.*, No. 23STCV03373 (Cal. Super. Ct. L.A. Cty. May 18, 2023) .....................16

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) .........................................................9, 10

*Gonzalez v. Sierras*, No. 20STCV22103 (Cal. Super. Ct. L.A. Cty. Apr. 29, 2021)....................16

*Goss v. Human Services Associates, Inc.*, 79 So. 3d 127 (Fla. Dist. Ct. App. 2012) .............14, 15

*Hernandez v. Burger*, 102 Cal. App. 3d 795 (1980)......................................................................13

*Howard v. Murphy*, 184 So. 3d 1155 (Fla. Dist. Ct. App. 2015)...................................................17

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009) ........................................................................................8

*Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353 (Fla. Dist. Ct. App. 2001) ....15

*In re Friend*, 11 Cal. 5th 720 (2021)................................................................................................8

*In re Uber Rideshare Cases*, No. CJC-21-005188 (Super. Ct. S.F. Cty. June 22, 2023) ..............14

*Jane Doe #21 (S.H.) v. CFR Enterprises, Inc.*, 93 Cal. App. 5th 1199 (2023)...............................8

*Juarez v. Boy Scouts of America, Inc.*, 81 Cal. App. 4th 377 (2000) ......................................15, 16

*Kelley v. School Board of Seminole County*, 435 So. 2d 804 (Fla. 1983) ....................................11

iv

1   *Lantzy v. Centex Homes*, 31 Cal. 4th 363 (2003)........................................................11

2   *Lee v. Simon*, 885 So. 2d 939 (Fla. Dist. Ct. App. 2004).............................................10

3   *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291 (1995) ..............14

4   *Malicki v. Doe*, 814 So. 2d 347 (Fla. 2002)..........................................................15, 17

5   *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010)..............................................12

6   *McCarther v. Pacific Telesis Group*, 48 Cal. 4th 104 (2010).........................................8

7   *Nazareth v. Herndon Ambulance Service, Inc.*, 467 So. 2d 1076 (Fla. Dist. Ct. App. 1985)........14

8   *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157 (1978)...............................12

9   *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1333 (2009) ...................................15

10  *Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th 1556 (1996)....................16

11  *Textron v. Travelers Casualty & Surety Co.*, 45 Cal. App. 5th 733 (2020).....................15

12  *Thompson v. Bank of N.Y.*, 862 So. 2d 768 (Fla. Dist. Ct. App. 2003)...........................19

13  *Tindell v. Murphy*, 22 Cal. App. 5th 1239 (2018)........................................................18

14  *Trejo v. Lyft, Inc.*, No. 22STCV21762 (Cal. Super. Ct. L.A. Cty. Dec. 2, 2022)...................16

15  *Tsuji v. Fleet*, 366 So. 3d 1020 (Fla. 2023).................................................................13

16  *W.D. v. Archdiocese of Miami, Inc.*, 197 So. 3d 584 (Fla. Dist. Ct. App. 2016)..........................11

17  *Wal-Mart Stores, Inc. v. Caruso*, 884 So. 2d 102 (Fla. App. 4th Dist. 2004) ............................16

18  *Ward v. Lyft, Inc.*, No. 21STCV42831 (Cal. Super. Ct. L.A. Cty. July 19, 2023) .......................16

19  *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906 (2001) ...................12

20  *Z.V. v. County of Riverside*, 238 Cal. App. 4th 889 (2015) ........................................16

21                              **STATUTES & RULES**

22  California Code of Civil Procedure § 335.1 ................................................................6, 7

23  California Code of Civil Procedure § 338 ...................................................................6, 7

24  California Code of Civil Procedure § 340.1 (West 1991) ................................................8

25  California Code of Civil Procedure § 340.16 ..............................................................7, 8

26  California Code of Civil Procedure § 361 ...........................................................4, 5, 7, 9

27  California Emergency Rules Related to COVID-19, Rule 9 ............................................7

28  Federal Rule of Civil Procedure 9(b).......................................................................1, 11

Federal Rule of Civil Procedure 12(b) ........................................................................................1

Florida Statutes § 95.11 (West 2018) .......................................................................................5

Florida Statutes § 627.748 .........................................................................................2, 12, 13

Illinois Compiled Statutes 57/25 ...............................................................................................14

**OTHER AUTHORITIES**

58 California Jurisprudence, 3d:  Statutes § 137 (February 2024 Update)......................................8

### NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

PLEASE TAKE NOTICE that on April 19, 2024, at 9:00 am, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, in Courtroom 7 on the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Maxine M. Chesney, Lyft, Inc. will present a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

Lyft asks that the Court dismiss the complaint with prejudice for the reasons below.  Lyft's motion is based on this notice, the memorandum of points and authorities below, and the accompanying declaration of Warren Metlitzky and exhibits thereto.

### STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss the complaint with prejudice for failure to state a claim.

### MEMORANDUM OF POINTS AND AUTHORITIES

Founded in 2012, Lyft became the first U.S. company to establish a peer-to-peer, on-demand transportation network—what the world now knows as "ridesharing."  Lyft's network, accessible through a digital application, created a marketplace enabling people seeking transportation to match with people providing rides.  Lyft, in effect, modernized and expanded the transportation call center, building a platform that allowed people providing rides to connect with people who needed them.

Safety is, and has been, at the heart of Lyft's mission.  From its inception more than a decade ago, Lyft's ridesharing network offered safety features that other transportation options did not.  Every rider using the Lyft network received information, including the driver's license plate, photo, and first name, before getting in the car.  Each trip produced a GPS log of the route and time, and riders had an opportunity to rate their ride and provide feedback once the ride was over.

Tens of millions of riders and millions of drivers use the Lyft network to arrange rides every year.  Those rides, unfortunately, are not immune from larger societal issues.  Plaintiff here alleges that on April 28, 2019 in Florida, she took a ride arranged through the Lyft platform while intoxicated.  She says that after the ride ended, the driver exited his vehicle, followed her into her home, and sexually assaulted her.  This is criminal conduct if proven.  But Plaintiff has not sued the driver—she has instead sued Lyft, seeking to hold it wholly liable for the driver's alleged actions.

Plaintiff's complaint states no cognizable claims against Lyft, however, and the Court should dismiss it with prejudice.

*First*, Plaintiff waited too long to bring suit, and all of Plaintiff's claims aside from breach of contract are untimely.  Florida's limitations period for negligence-based, vicarious-liability misrepresentation, and products-liability causes of action, which applies under California's borrowing statute, is four years.  But, on the face of the complaint, Plaintiff did not file this action for nearly five years following the alleged incident.  Even if the borrowing statute did not apply, Plaintiff's negligence-based, misrepresentation, and products-liability claims would be untimely under California limitations law, which would control in that circumstance.

*Second*, Plaintiff's theory that Lyft is a common carrier (including her specific claim for "common-carrier negligence") and her allegations of vicarious liability fail under Florida law. Florida law applies because Plaintiff is a resident of Florida and was injured by an alleged tort in Florida.  The Florida legislature has deemed transportation-network companies, and drivers on their platforms, "not … common carrier[s]," Fla. Stat. § 627.748(2), conclusively foreclosing any theory arising from Lyft's supposed common-carrier status.  Plaintiff's vicarious-liability claims similarly founder, given that criminal conduct (such as sexual battery) is outside the scope of any business relationship between Lyft and drivers on the platform and thus cannot give rise to vicarious liability.

*Third*, Plaintiff's causes of action for negligent hiring, supervision, and retention; intentional and negligent misrepresentation; and breach of contract are meritless under both California and Florida law.  To support a negligent-hiring claim, a plaintiff must allege some specific "red flag" that should have put an employer on notice that the specific agent in question had a propensity to engage in the alleged wrongdoing.  Plaintiff does not do so.

The misrepresentation claims fail for multiple reasons, including because Plaintiff alleges no misrepresentation on which she relied.  Her general statements about Lyft's commitment to safety— and the snippets of unsourced material in her complaint—are insufficient to fulfill her burden, and non-actionable in all events.  Plaintiff's contract claim fails because Plaintiff has not alleged any particular contract between her and Lyft, nor identified any specific alleged breach.

1

## BACKGROUND ALLEGATIONS

2        Plaintiff alleges that "on or about April 28, 2019," she "was intoxicated and a Lyft ride was

3  requested for her through the Lyft App."  (ECF 1 (Compl. (Jan. 10, 2024)), ¶ 58.)  Plaintiff asserts

4  that following the ride, the driver "exited the vehicle and followed Plaintiff inside her residence,"

5  where he "began assaulting" her.  (Compl. ¶¶ 62–67.)  Approximately one month later, she

6  suspected she was pregnant.  (Compl. ¶ 69.)  Plaintiff describes the ensuing pregnancy, which

7  included complications, as a "nightmare" (Compl. ¶¶ 71–72), and she ultimately gave birth to a son

8  via "an emergency C-section" (Compl. ¶ 72).  A DNA test confirmed there was a greater than 99%

9  probability the driver was the father.  (Compl. ¶¶ 73–74.)

10       Plaintiff filed suit on January 10, 2024, alleging "depression, anxiety, nightmares, and

11 persistent fear," as well as economic injuries, "as a result of her assault."  (Compl. ¶ 75.)  Nineteen

12 of the complaint's 273 paragraphs specifically address Plaintiff's alleged incident; the remainder

13 deploy general allegations about Lyft.  Absent from the complaint is the driver as a defendant—or,

14 indeed, any specific allegations about the driver, such as "red flags" that would have given notice he

15 had a propensity to engage in the conduct Plaintiff alleges.

16       The complaint asserts twelve claims against Lyft, which fall into several categories:

17    • Negligence:  general; hiring, retention, and supervision; common carrier; failure to warn;
18       infliction of emotional distress.

19    • Strict products-liability:  design defect; failure to warn.

20    • Fraud:  intentional misrepresentation; negligent misrepresentation.

21    • Contract:  breach of contract.

22    • Vicarious liability:  for the "driver's torts"; for "sexual battery."

23       For purposes of this motion to dismiss, Lyft has accepted Plaintiff's factual allegations as

24 true.  Lyft believes, however, the evidence in discovery would tell a different story—although the

25 case should not proceed that far.  Even on the allegations in the complaint, Plaintiff cannot proceed.

26

## ARGUMENT

27 ## I.    ALL BUT PLAINTIFF'S CONTRACT CLAIM ARE UNTIMELY

28       Plaintiff alleges an April 28, 2019 incident, but she did not file suit until January 10, 2024—

3

nearly five years later. That delay renders all but her breach-of-contract claim untimely. Because the claims' untimeliness is plain on the complaint's face, the Court should dismiss with prejudice. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

\* \* \* \* \*

In this California action against a California-resident defendant, a Florida-resident plaintiff has brought suit for an alleged injury suffered in Florida. One of two sources of California law selects the limitations period: Either California's borrowing statute, California Code of Civil Procedure § 361, which provides that where a cause of action "has arisen in another State … and by the laws thereon cannot there be maintained against a person by reason of the lapse of time," the foreign limitations period applies; or California's governmental-interest choice-of-law rule.[1]

Here, because Plaintiff's negligence-based, vicarious-liability, misrepresentation, and products-liability claims arose in Florida, § 361 applies to render them untimely under Florida's four-year statutes of limitations for those causes of action. Even were the Court to find the borrowing statute does not apply, Plaintiffs' negligence-based, misrepresentation, and products-liability claims would be untimely under California's two- and three-year limitations periods—which would apply under the governmental-interest test. *See G & G Prods., LLC v. Rusic*, 2019 WL 2996498, at \*4 (C.D. Cal. June 10, 2019) (borrowing statute governs only if foreign limitations period is shorter than California limitations period). Under either potentially-applicable law, then, most of Plaintiff's case is untimely.

A.      **California Borrows Florida's Four-Year Period to Bar Plaintiff's Negligence-Based, Vicarious-Liability, Misrepresentation, and Products-Liability Claims.**

Section 361 asks whether a cause of action has arisen in a foreign state and, if so, whether those causes are untimely under that state's laws. Plaintiff's negligence-based, vicarious-liability, misrepresentation, and products-liability claims all sound in tort. As the Ninth Circuit held, a tort claim "has arisen" for purposes of § 361 in the state where the "last act necessary to establish liability" occurred. *Chinacast Educ. Corp. v. Zhuoguo Chen*, 727 F. App'x 394, 395 (9th Cir. 2018) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 704–05 (2004)). The "last act necessary to

---

[1] Federal courts sitting in diversity apply the forum state's choice-of-law principles to the applicable statutes of limitations. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).

1    establish liability" for those tort claims is where the injury occurred. *See, e.g.*, *Sosa*, 542 U.S. at 705

2    (equating the two). That is Florida.

3        The timeliness analysis under Florida law is straightforward: Based on the facts pleaded in

4    the complaint, 1,718 days, or more than 4 years and 8 months, passed from when Plaintiff suffered

5    her alleged injury to when she filed her complaint. Plaintiff's claims (other than the contract claim)

6    are subject to a four-year limitations period under Florida law. Fla. Stat. § 95.11(3)(a) (West 2018)[2]

7    (negligence); *id.* § 95.11(3)(e) (products liability); *id.* § 95.11(3)(j) (intentional misrepresentation);

8    *id.* § 95.11(3)(o) (vicarious liability); *see Williams v. Home Advantage Humana*, 2023 WL 4104520,

9    at *1 n.3 (M.D. Fla. May 31, 2023); *Heard v. Publix Supermarkets Inc.*, 808 F. App'x 904, 907 (11th

10   Cir. 2020); *Buettner v. Cellular One, Inc.*, 700 So. 2d 48, 48–49 (Fla. Dist. Ct. App. 1997). Because

11   Plaintiff's claims arose in Florida and they are untimely under Florida law, § 361 deems them

12   untimely in this action.[3] The Court can end its analysis there and dismiss with prejudice as untimely

13   all but Plaintiff's contract claim.

14       **B.    In the Alternative, California's Two- and Three-Year Periods Bar Plaintiff's**

15           **Negligence-Based, Misrepresentation, and Products-Liability Claims.**

16       If the borrowing statute did not apply (it does), "the court engages in the standard choice of

17   law test to determine which forum's law applies." *G & G Prods.*, 2019 WL 2996498, at *4. Under

18   California's governmental-interest test, because Lyft is a California company and Plaintiff brought

19   suit in California federal court, California's limitations law would govern. *Deutsch v. Turner Corp.*,

20   324 F.3d 692, 716–17 (9th Cir. 2003).

21       1.    Applying the governmental-interest test, California's federal courts routinely hold

22   that California's shorter statutes of limitations apply in cases brought against California defendants:

23       ***California's and Florida's statutes of limitations differ.*** The governmental-interest rule first

24

25   [2] The 2018 statute governed claims arising through March 2023. The Florida legislature later
     shortened the negligence limitations period to two years, but it does not apply retroactively. *See*
26   *Williams v. Home Advantage Humana*, 2023 WL 4104520, at *1 n.3 (M.D. Fla. May 31, 2023).

27   [3] Although Plaintiff does not allege it (and therefore the Court need not credit it now), her claims
     against Lyft were tolled by agreement for no more than 250 days. (Lyft understands that agreements
28   dated October 25, 2022 and March 31, 2023 tolled Plaintiff's claims from October 25, 2022 to June
     30, 2023.) Even subtracting this contractual tolling, her claims had run for at least 1,468 days at
     filing, or at least 4 years and 8 days—beyond Florida's governing four-year limitations period.

requires that the Court determine whether potentially-applicable limitations periods are different. *Grant v. NFL Players Ass'n*, 2011 WL 11733656, at *3 (C.D. Cal. Sept. 19, 2011). Here, California and Florida limitations differ: Under California law, a two-year statute of limitations covers negligence-based and products-liability claims. Cal. Code Civ. Proc. § 335.1; *see Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720 (N.D. Cal. 2019) (applying § 335.1 to negligence and product-liability claims). For intentional misrepresentation, the California period is three years. Cal. Code Civ. Proc. § 338(d); *Vinayagam v. Pierce*, 2023 WL 5748496, at *4 (N.D. Cal. Feb. 7, 2023). A four-year limitations period controls under Florida law, as detailed above.[4]

  ***In this California suit against a California defendant, California law applies.*** Because the relevant limitations periods differ in California and Florida, the governmental-interest test next asks whether both states have an interest in seeing their law apply to the dispute. *Deutsch*, 324 F.3d at 716. Here, because "the forum is in California and the only defendant is a California resident," "[o]nly California has an interest in having its statute of limitations applied." *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 645 (9th Cir. 1983) (citing *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982)). This is so because statutes of limitations "are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases." *Ashland*, 129 Cal. App. 3d at 794. Applying California statutes of limitations "advance [this] underlying policy." *Id.*

  California's federal courts thus consistently have held that California's limitations periods govern in cases brought against California-resident defendants. *See, e.g.*, *Nelson*, 716 F.2d at 645; *Deutsch*, 324 F.3d at 716–17; *Zurich Am. Ins. Co. v. Kwan Wo Ironworks Inc.*, 2022 WL 2981821, at *3 (N.D. Cal. July 28, 2022); *Rustico*, 424 F. Supp. 3d at 728–29; *Target Tech. Co. v. Williams Advanced Materials, Inc.*, 2008 WL 5002935, at *9 (C.D. Cal. Nov. 21, 2008) (court aware of no case "that applied a statute of limitations other than California's where the defendants were residents of California and California was the forum"). So too here.

---

[4] California has a ten-year limitations period for vicarious-liability claims arising from sexual battery, Cal. Code Civ. Proc. § 340.16(a), which Plaintiff asserts to hold Lyft for the driver's alleged sexual battery. Lyft does not contend those claims would be untimely under California law (although they are under governing Florida law); in all events, as detailed below, Lyft is not vicariously liable for the driver's alleged criminal conduct.

2.    The timeliness analysis under California law, as in Florida, is straightforward.  Of the 1,718 days between when Plaintiff's claims accrued and when Plaintiff filed suit, a period of just under 180 days was tolled due to COVID-19.[5]  Based on the facts pleaded in the complaint, then, her claims had been live when she filed her complaint for at least 1,538 days, or approximately 4 years and 2 months, under California law—well beyond the two-year limitations period for her negligence-based, negligent-misrepresentation, and products-liability claims (California Code of Civil Procedure § 335.1) and the three-year limitations period for her intentional-misrepresentation claim (California Code of Civil Procedure § 338(d)).[6]

3.    California's sexual-assault statute of limitations, California Code of Civil Procedure § 340.16, would not apply to Plaintiffs' untimely negligence-based, misrepresentation, and products-liability claims.

The Court need not reach this statutory-construction argument given that § 361 applies to bar Plaintiff's claims under Florida law.  On the merits, however, the statute provides that "any action for recovery of damages suffered as a result of" *sexual assault* must be commenced within "10 years from the ... assault."  Cal. Code Civ. Proc. § 340.16(a) (emphasis added).  It defines "sexual assault" by reference to an enumerated list of intentional criminal sexual misconduct.  *Id.* § 340.16(b)(1) (listing, for example, sexual battery, rape, sodomy, and oral copulation).  Consistent with the principle that an express list of specific, related items does not include omitted items, *see Wheeler v. City of Santa Clara*, 894 F.3d 1046 (9th Cir. 2018), § 340.16(a)'s reference to "sexual assault" cannot be read to encompass unenumerated other torts—and particularly those that are different in kind from the willful criminal acts included in the statute, such as the negligence, misrepresentation, and products-liability claims Plaintiff brings here.  There is more:

- A California appellate court has construed materially similar "as a result of language" in

---

[5] California Emergency Rule 9, https://www.courts.ca.gov/documents/appendix_I.pdf (tolling claims from April 6, 2020 through October 1, 2020).

[6] Even were the Court to credit Plaintiff's unpleaded tolling agreements, they would add no more than 250 days' tolling.  Together with the COVID-19 tolling, then, in the almost five years between the alleged assault and this suit, Plaintiff is entitled to no more than 430 days' tolling, meaning her claims had been pending for at least 1,292 days, or approximately 3.5 years at the time she filed suit—longer than California's two- and three-year limitations periods.

a related statute to exclude torts akin to those Plaintiff asserts. *See Debbie Reynolds Pro. Rehearsal Studios v. Super. Ct.*, 25 Cal. App. 4th 222 (1994).

- There is an "almost irresistible" presumption the legislature's use of particular statutory language in one statute carries "the same … meanings given by the courts" when interpreting an earlier statute. 58 Cal. Jur. 3d Statutes § 137; *accord In re Friend*, 11 Cal. 5th 720, 730 (2021); *Hughes v. Pair*, 46 Cal. 4th 1035, 1046 (2009). By using in § 340.16(a) nearly identical language to that which *Debbie Reynolds* had given meaning in § 340.1, the legislature intended *Debbie Reynolds*' reading to apply.

- Evidence from the rest of the statute confirms the legislature chose a limited scope for § 340.16(a), in contrast to other sections where the legislature spoke differently—and more broadly.[7]

Section 340.16(a)'s plain language, *Debbie Reynolds*, and ordinary principles of statutory interpretation confirm that the statute cannot save Plaintiff's untimely claims under California law.[8] But, as noted, the Court need not reach this holding given that Plaintiff's claims do not make it past the borrowing statute and untimeliness under Florida limitations law.

* * * * *

The Court should apply California's borrowing statute and find Plaintiff's non-contract claims barred by Florida limitations law. The Court does not have to decide anything else. Should the Court find the borrowing statute inapplicable, however, California's choice-of-law rule would

---

[7] For example, elsewhere in § 340.16, the legislature coupled the phrase "as a result of sexual assault" with language detailing that the subsection covered "any theory of liability established by statute or common law, including, but not limited to, negligence, intentional torts, and vicarious liability." Cal. Code Civ. Proc. § 340.16(e) & (e)(4)(C). There would be no reason for the legislature to expressly specify that that subsection (subsection (e)) applies to negligence, intentional tort, and vicarious-liability claims if the phrase "as a result of" already encompasses them. Subsection (a) does not include this express addition by the legislature, so construing "as a result of" in subsection (a) to include more than the enumerated criminal conduct would create surplusage in subsection (e). *Contra McCarther v. Pac. Telesis Grp.*, 48 Cal. 4th 104, 110 (2010).

[8] One California appellate court suggested that § 340.16(a) applied to "at least some of the causes of action" alleging negligence and misrepresentation brought by a plaintiff. *Jane Doe #21 (S.H.) v. CFR Enterprises, Inc.*, 93 Cal. App. 5th 1199, 1209 (2023). But *Jane Doe #21*, and its progeny *Acevedo v. eXp Realty, LLC*, 2024 WL 650189, at *29 (C.D. Cal. Jan. 29, 2024) (following *Jane Doe #21*), ignore *Debbie Reynolds* and do not address that interpreting § 340.16(a) to cover unenumerated non-criminal conduct would impart surplusage into the statute.

1  select California's limitations regime for Plaintiff's claims.  And under California law, Plaintiff's

2  negligence-based, misrepresentation, and products-liability claims are untimely.  The fact Plaintiffs

3  claims are almost-entirely barred under both Florida and California law is summarized below:

| Claim | Timeliness Under Florida Law | Timeliness Under California Law |
|---|---|---|
| Negligence | **Untimely** | **Untimely** |
| Products Liability | **Untimely** | **Untimely** |
| Misrepresentation | **Untimely** | **Untimely** |
| Vicarious Liability | **Untimely** | Timely |
| Contract | Not at issue in Lyft's limitations arguments | |

### C.    No Discovery or Equitable Doctrines Save Plaintiff's Untimely Claims.

Seemingly recognizing its statute-of-limitations problems, the complaint purports to invoke the discovery rule to delay accrual (Compl. ¶¶ 103–05), fraudulent concealment to toll the limitations period (Compl. ¶¶ 106–09), and equitable estoppel to prevent Lyft from making timeliness arguments (Compl. ¶ 110).  None apply.

*First*, "[u]nder the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005); *see also Korman v. Iglesias*, 825 F. Supp. 1010, 1014 (S.D. Fla. 1993) ("The type of notice to trigger the limitations period is when a plaintiff had notice of the *possible* invasion of [her] legal rights"—and "it was not necessary that plaintiff know of all elements of [her] alleged cause of action." (emphasis added and internal quotation marks omitted)).[9]  Here, Plaintiff does not dispute she was aware of her alleged injury as of April 28, 2019, as well as aware of the fact her alleged assailant was a driver on the Lyft platform.  Knowledge of these facts forecloses the discovery rule.  Plaintiff nevertheless

---

[9] Courts have rendered the borrowing-statute analysis a bit labyrinthine, and the Ninth Circuit has suggested that California law should apply to accrual questions (like the discovery rule) even when a foreign state's limitations period governs under § 361.  *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 948 n.6 (9th Cir. 2018).  The Court need not wander the issue, however, as Plaintiff's discovery-rule allegations are insufficient under both California and Florida law.

1  suggests she could not have "reasonably" discovered that *Lyft* could be liable—a fact, she says, she

2  did not learn until "she saw advertisements for legal help." (Compl. ¶¶ 108–09.) But that is

3  irrelevant. A purported lack of knowledge regarding all potential defendants does not matter for the

4  discovery rule. *Fox*, 35 Cal. 4th at 807; *Lee v. Simon*, 885 So. 2d 939, 942–43 (Fla. Dist. Ct. App.

5  2004) (no tolling for "failure to discover the [allegedly tortious] actor"); *Cruz v. Am. Sec. Ins. Co.*,

6  2016 WL 5791245, at *3 (M.D. Fla. Oct. 4, 2016) (same). That is "because the identity of the

7  defendant is not an element of a cause of action." *Fox*, 35 Cal. 4th at 807; *accord Cruz*, 2016 WL

8  5791245, at *3 (applying the rule).

9         Plaintiff had knowledge of her injury, and she knew her alleged attacker was a driver on the

10  Lyft platform, which at least makes for "suspicion" of the remaining elements—namely,

11  "wrongdoing, causation, and harm." That is enough. *Fox*, 35 Cal. 4th at 807; *see Cruz*, 2016 WL

12  5791245, at *3 (doctrine is "reserved to those cases where the plaintiff cannot readily discover the

13  *injury* done to [her]" (quoting *Carter v. Lowe's Home Centers, Inc.*, 954 So. 2d 734, 734 (Fla. Dist.

14  Ct. App. 2007) (emphasis provided by M.D. Fla.))). (In all events, to use the discovery rule a

15  plaintiff must "conduct a reasonable investigation of all potential causes of that injury." *Fox*, 35 Cal.

16  4th at 808; *cf. Cruz*, 2016 WL 5791245, at *3 (plaintiffs are charged with knowledge they

17  "*reasonably* should know" (emphasis added)). Plaintiff does not allege she conducted *any*

18  investigation—let alone a reasonable one.)

19         *Second*, Plaintiff says "the running of any statute of limitations has been equitably tolled by

20  reason of Lyft's intentional representations and fraudulent concealment and conduct" because she

21  was unaware, and could not reasonably know or have learned through reasonable diligence "that

22  Lyft could be held liable for the risks its drivers posed." (Compl. ¶¶ 106–09.) This, too, is incorrect.

23  Much like the discovery rule, tolling for fraudulent concealment requires that a plaintiff "did not

24  have 'actual or constructive knowledge of the facts giving rise to its claim.'" *Ryan v. Microsoft*

25  *Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015). Here, as detailed above, Plaintiff knew of her

26  alleged injury and that the alleged assailant was a driver on the Lyft platform—which defeats

27  fraudulent-concealment tolling. *Hexcel Corp. v. Ineos Polymers*, 681 F.3d 1055, 1060 (9th Cir.

28  2012); *accord Burr v. Philip Morris USA, Inc.*, 2012 WL 5290164, at *3–4 (M.D. Fla. Sept. 28,

2012) (rejecting tolling where plaintiff knew of injury even if "the details of his claim may not have been known"). She also "had enough information to warrant an investigation," *Hexcel*, 681 F.3d at 1060; *see also Kelley v. School Bd. of Seminole Cnty.*, 435 So. 2d 804, 806 (Fla. 1983) ("knowledge of a specific defect" is not required—knowing "something was wrong" sufficed), which confirms fraudulent concealment's unavailability here, *see Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133 (C.D. Cal. 2010); *Kelley*, 435 So. 2d at 806.

Moreover, a plaintiff seeking to invoke fraudulent concealment "must do so with particularity," alleging the "who, what, when, where, and how of the alleged fraudulent concealment." *Yumul*, 733 F. Supp. 2d at 1133 (collecting cases); *see also Bettles v. Toyota Motor Corp.*, 645 F. Supp. 3d 978, 985 (C.D. Cal. Dec. 13, 2022) (applying Rule 9(b) to fraudulent concealment); *Padilla v. Porsche Cars N. Am., Inc.*, 2020 WL 1472301, at *3 (S.D. Fla. Mar. 26, 2020) (same); *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (same). Plaintiff has not identified *any* specific statements by Lyft after April 28, 2019 informing her fraudulent-concealment theory. Missing as well is any allegation as to when the alleged "fraud was discovered, the circumstances under which it was discovered, [or] the circumstances indicating that she was not at fault for failing to discover it earlier." *Yumul*, 733 F. Supp. 2d at 1133; *cf. Padilla*, 2020 WL 1472301, at *5–7 ("[N]either diligent nor non-diligent plaintiffs are 'protected from the expiration of claims the factual basis of which they could and should have discovered through the exercise of due diligence.'" (quotation omitted)). Each of these absences, too, is dispositive.

Neither the discovery rule nor fraudulent concealment renders timely Plaintiffs' untimely claims. Plaintiff also asserts that Lyft is "estopped" from relying on any limitations defense "because of its concealment." (Compl. ¶ 110.) But "the complaint is devoid of any indication that [Lyft's] conduct *actually and reasonably induced plaintiff[] to forbear suing*" within the applicable period, precluding reliance on estoppel. *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 674 (2003) (emphasis in original); *accord W.D. v. Archdiocese of Mia., Inc.*, 197 So. 3d 584, 590 (Fla. Dist. Ct. App. 2016) ("To assert equitable estoppel, the defendant must have engaged in *wrongful conduct* which induced another into for[]bearing suit within the applicable limitations period." (emphasis in

original) (internal quotation marks omitted).

## II.  PLAINTIFF'S COMMON-CARRIER AND VICARIOUS-LIABILITY THEORIES FAIL UNDER GOVERNING FLORIDA LAW

Plaintiff's theory that Lyft is a common carrier (Compl. ¶¶ 138–56 (alleging "common-carrier negligence"); Compl. ¶¶ 1, 79, 83–85, 242–45 (referencing Lyft's supposed common-carrier status)) is unavailable because, by Florida statute, Lyft is not a common carrier, Fla. Stat. § 627.748(2).  Plaintiff's vicarious-liability claims (Compl. ¶¶ 222–62) fail because the driver's alleged conduct is outside the scope of any employment.[10]

\* \* \* \* \*

A "separate conflict of laws inquiry must be made with respect to each issue in the case." *Wash. Mut. Bank FA v. Superior Ct.*, 24 Cal. 4th 906, 920 (2001).  Based on that issue-specific analysis, Florida law governs both Plaintiff's common-carrier theory and vicarious liability.

Regarding the former, a Florida statute provides that a transportation-network company, like Lyft, or a driver on the company's platform "is not a common carrier."  Fla. Stat. § 627.748(2). California's common-carrier statute, by contrast, does not expressly comment on a transportation-network company's liability.[11]  Courts in and of California applying the governmental-interest test recognize that when a plaintiff is a resident of a foreign state and was injured by a tort in a foreign state, the foreign state's law applies to business liability for the alleged acts.  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1239–43 (9th Cir. 2024); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 98–101 (2010); *Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180–82 (2007); *Offshore Rental Co., Inc. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 168 (1978). Indeed, "California's courts have frequently applied foreign laws that serve to protect businesses by limiting liability, even when applying that law precludes recovery by injured California residents." *Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 562–63 (9th Cir. 2020).

Florida has the only relevant governmental interest.  The statute effectuates Florida's interest

---

[10] Drivers on the Lyft platform are independent contractors, but Lyft need not argue that difference to prevail on its claims; reserving its rights, Lyft does not argue that distinction here.

[11] Lyft disputes it would be a common carrier even under California law, but the Court need not decide that issue because California's governmental-interest test selects Florida law.

1    in attracting rideshare companies to do business in the state, both to "obtain tax and other revenue"

2    and to "advance the opportunity of state residents to obtain employment and the products and

3    services offered by out-of-state companies." *Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488,

4    497–98, 502 (2019). *See generally Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) ("[W]ith

5    respect to regulating or affecting conduct within its borders, the place of the wrong has the

6    predominant interest."). California, by contrast, has little interest in regulating another state's

7    relationship with a transportation-network company, particularly where the underlying conduct

8    occurred outside California and involves a non-California plaintiff. *See Offshore*, 22 Cal. 3d at 168

9    ("At the heart of Louisiana's denial of liability lies the vital interest in promoting freedom of

10    investment and enterprise within [its] borders. The imposition of liability on defendants, therefore,

11    would strike at the essence of a compelling Louisiana interest.").

12          For the same reasons, Florida law applies to Plaintiff's vicarious-liability claims. Florida's

13    interest in policing activity within its borders and "reliably defining the duties and scope of liability

14    of an employer doing business within its borders" means Florida vicarious-liability law applies.

15    *Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 (9th Cir. 1994).

16          **A.**      **Lyft Cannot Be Liable as a Common Carrier.**

17          Florida Statute § 627.748(2) is unequivocal that transportation-network companies or drivers

18    on their platforms are "not … common carrier[s]." This unambiguous statement precludes Lyft's

19    possible status as a common carrier, as well as any heightened duty of care flowing from common-

20    carrier status. The language the Florida legislature chose for § 627.748(2) compels this result. *See*

21    *Tsuji v. Fleet*, 366 So. 3d 1020, 1025 (Fla. 2023) (Florida courts' "first (and often only) step … is to

22    ask what the Legislature actually said in the statute, based upon the common meaning of the words

23    used" (quoting *Shepard v. State*, 259 So. 3d 701, 705 (Fla. 2018))). After all, if a consequence of

24    common-carrier status is being subject to heightened tort duties, then a consequence of not being a

25    common carrier is not being subject to those duties.

26          An Illinois appellate court interpreting a similar statute came to this same result, stating "that

27    '[rideshare companies] are not common carriers, contract carriers, or motor carriers'" to preclude

28    Lyft "from being subject to the same heightened duty of care and principles of vicarious liability

applicable to common carriers." *Doe v. Lyft, Inc.*, 176 N.E.3d 863, 870 (Ill. App. Ct. 2020) (quoting 625 Ill. Comp. Stat. 57/25(e)). The court found the statute "clearly and expressly exempts [rideshare companies] from the standards of liability that apply to common carriers." *Id.* at 873–74. So too with Florida's statute.

### B.    Lyft Is Not Vicariously Liable for the Diver's Criminal Conduct.

Plaintiff's allegation that the driver engaged in criminal conduct—sexual battery—forecloses any vicarious liability for Lyft. Under Florida law, "an employer generally cannot be held liable for the tortious or criminal act of an employee, unless the act was committed during the course of employment to further a purpose or interest of the employer." *Doe v. Willis*, 2023 WL 2799747, at *9 (M.D. Fla. Apr. 5, 2023); *Goss v. Hum. Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. Dist. Ct. App. 2012). And "[s]exual assaults and batteries committed by employees are generally 'held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer.'" *Goss*, 79 So. 3d at 132 (quoting *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. Dist. Ct. App. 1985)).[12]

Plaintiff suggests that because she came into contact with her assailant in connection with him driving on the Lyft platform, that is sufficient to render his conduct within the scope of employment. (Compl. ¶¶ 229–40.) Not so. Although Florida law provides that vicarious liability may exist for the tort of an agent when the agent "was aided in accomplishing the tort by the existence of the agency relation," *Nazareth*, 467 So. 2d at 1078, both Florida and federal courts have rejected that principle where the employment's only alleged contribution to the tort was bringing the perpetrator and the victim together, *see, e.g.*, *Doe*, 2023 WL 2799747, at *11 (no claim where defendant's employment "meant that he had an opportunity to assault" the plaintiff); *Z.M.L. v. D.R. Horton, Inc.*, 2021 WL 3501099, at *6 (M.D. Fla. June 11, 2021) ("The fact that [the employee] was in the [victim's] home by virtue of his employment is not enough to demonstrate that his agency

---

[12] The same is true in California. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296 (1995). Although Plaintiff says Lyft is vicariously liable because it is a common carrier under California law (Compl. ¶¶ 228–53), that is wrong for two reasons. *First*, because Florida law governs. *Second*, because even under California law, Lyft's supposed common-carrier status does not override the fact acts outside the scope of employment do not give rise to vicarious liability. Ex. A (*In re Uber Rideshare Cases*, No. CJC-21-005188, at 10 (Cal. Super. Ct. S.F. Cty. June 22, 2023)); *Burmakova v. Uber Techs.*, 2021 Cal. Super. LEXIS 96610, at *1 (Cal. Super. Ct. L.A. Cty. Oct. 22, 2021). (The Court need not address this latter argument because Florida law governs.)

14

helped him perpetrate a sexual assault."); *accord Goss*, 79 So. 3d at 132; *Hammer v. Lee Mem'l Health Sys.*, 2018 WL 3707832, at *4 (M.D. Fla. Aug. 3, 2018); *Rivera v. Aaron Rents, Inc.*, 2008 WL 638353 at *3 (M.D. Fla. 2008); *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 358 (Fla. Dist. Ct. App. 2001).  In a variation on this argument, Plaintiff says her attacker's position as a driver gave him "unique power" because he could "activate locks" or "prevent[] the passenger from exiting the vehicle."  (Compl. ¶ 237.)  But this is irrelevant, including because it had nothing to do with an alleged assault Plaintiff says began in her home.  (Compl. ¶¶ 62–63.)

## III.    THE HIRING, MISREPRESENTATION, AND CONTRACT CLAIMS FAIL

Plaintiff cannot proceed on her claims for negligent hiring, intentional and negligent misrepresentation, and breach of contract under either California or Florida law.  Because those states' laws do not differ with respect to those claims, California's choice-of-law rules favor "its own rules of decision."  *Textron v. Travelers Cas. & Sur. Co.*, 45 Cal. App. 5th 733, 755 (2020).

### A.    The Negligent-Hiring Claim Founders on the Absence of Any "Red Flags."

Plaintiff's claim (whether based in hiring, supervision, or retention) requires her to plead, among other things, that Lyft knew or should have known a reason the driver *himself* was likely to cause the specific type of harm alleged.  "There can be no liability for negligent supervision in the absence of knowledge by the principal that the agent … was a person who could not be trusted to act properly without being supervised."  *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395, 397 (2000) (internal quotation marks omitted), *disapproved of on other grounds by Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021); *accord Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1276 (S.D. Fla. 2013).  In other words, a plaintiff must establish the principal "knew or should have known that hiring the employee created *a particular risk or hazard* and *that particular harm* materializes."  *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996) (emphasis added); *accord Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139 (2009); *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) ("With regard to the claim for negligent hiring, the inquiry is focused on whether the *specific danger that ultimately manifested itself* (e.g., sexual assault and battery) reasonably could have been foreseen at the time of hiring."); *Hammer*, 2018 WL 3707832, at *2 (dismissing claim because "Plaintiff alleges no facts demonstrating that [Defendant] knew, or should

have known, about [candidate]'s unfitness to serve").

California and Florida courts apply this "red-flag" requirement strictly. For example, in California, claims against a church for hiring a pastor who molested a child failed where, even presuming the church had learned of the pastor's prior sexual affairs with adults, there was nothing to put the church on notice that he "would commit sexual crimes on a minor." *Roman Cath. Bishop v. Superior Ct.*, 42 Cal. App. 4th 1556, 1564–68 (1996); *see also Capital Cities*, 50 Cal. App. 4th at 1054–55. And in *Euwema v. Osceloa County*, a Florida case, the court found insufficient on a motion to dismiss allegations a fire department knew or should have known of a firefighter's propensity to "intentionally let Plaintiffs' house burn down because he disliked Plaintiffs and their disabilities" from knowledge of "gross negligence and misconduct during training events"—that knowledge did not put the fire department "on notice of the specific dangers that ultimately manifested." 2021 WL 2823448, at *4 (M.D. Fla. Apr. 12, 2021).

Case after case is in accord, rejecting negligent hiring, supervision, and retention claims where, as here, there are no facts showing the specific tortfeasor at issue had a history of the same misconduct alleged by the plaintiff. *See, e.g.*, *Z.V. v. Cty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015); *Juarez*, 81 Cal. App. 4th at 397; *Wal-Mart Stores, Inc. v. Caruso*, 884 So. 2d 102, 105 (Fla. Dist. Ct. App. 2004). Indeed, courts have dismissed identical claims against transportation-network companies, including Lyft, at the pleading stage where the plaintiff failed to identify "anything" that existed in a driver's background suggesting a propensity to cause the alleged harm. *Doe 1 v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 789 (N.D. Cal. 2016); *accord Fusco v. Uber Techs., Inc.*, 2018 WL 3618232, at *5 (E.D. Pa. July 27, 2018) ("Although Plaintiff alleges that a reasonable employer in Defendant's position would have conducted additional screening before hiring the driver, this allegation does not state a claim for negligent hiring unless it is further alleged that a more thorough screening process would have uncovered signs of [the alleged] behavior."); *see also, e.g.*, Ex. B (*Ward v. Lyft, Inc.*, No. 21STCV42831 (Cal. Super. Ct. L.A. Cty. July 19, 2023)); Ex. C (*Flores v. Lyft, Inc.*, No. 23STCV03373 (Cal. Super. Ct. L.A. Cty. May 18, 2023)); Ex. D (*Trejo v. Lyft, Inc.*, No. 22STCV21762 (Cal. Super. Ct. L.A. Cty. Dec. 2, 2022)); Ex. E (*Gonzalez v. Sierras*, No. 20STCV22103 (Cal. Super. Ct. L.A. Cty. Apr. 29, 2021)); Ex. F (*Doe v. Lyft, Inc.*, No. RG19015895

16

1    (Cal. Super. Ct. Alameda Cty. Oct. 2, 2019)).

2        Plaintiff alleges no "red flags" specific to this driver that would have put Lyft on notice he

3    was likely to engage in the alleged misconduct.  Nor are there allegations that any background check

4    missed prior conduct that "created a particular risk or hazard" this driver would engage in the

5    behavior Plaintiff alleges.  *Capital Cities*, 50 Cal. App. 4th at 1054; *see also Malicki*, 814 So. 2d at

6    362.  These absences foreclose Plaintiff's negligent hiring, supervision, and retention claim.

7        Plaintiff's abstract arguments about the purported deficiencies in Lyft's background-check

8    process or driver education cannot forestall dismissal of the negligent-hiring claim.  (Compl. ¶¶ 127–

9    35.)  Changes of the type Plaintiff argues Lyft should have implemented are irrelevant unless they

10   would have revealed that this driver "created a particular risk" of the harm Plaintiff alleges.  *Capital*

11   *Cities*, 50 Cal. App. 4th at 1054; *see also Tello*, 939 F. Supp. 2d at 1276.  Here, Plaintiff makes no

12   allegations that any supposed change in Lyft's processes would have put Lyft on notice of any

13   particular risk with respect to this driver.  Without any causal connection between Plaintiff's alleged

14   injuries and the purported deficiencies, Plaintiff's theory boils down to the contention that because

15   Lyft supposedly could have done more, it was legally required to do so.  That runs headlong into

16   California and Florida courts' repeated admonition that a negligent hiring, supervision, and retention

17   claim only survives where the employer knew of and ignored, or failed to discover, evidence of the

18   specific employee's propensity to engage in the misconduct alleged.

19       **B.    Plaintiff Has Not Alleged Any Actionable Misrepresentations.**

20       In support of her claims for intentional and negligent misrepresentation, Plaintiff identifies

21   two sets of statements:  (i) a pair of blog posts from 2015 and 2016 (Compl. ¶ 43); and (ii)

22   unidentified instances where Lyft "actively markets itself as a safe company that provides safe rides"

23   (Compl. ¶¶ 56, 87, 94).  She has not alleged a misrepresentation claim based on either.

24       To prevail on a claim of intentional misrepresentation under either California or Florida law,

25   a plaintiff must establish:  "(1) misrepresentation, (2) knowledge of falsity, (3) intent to induce

26   reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting

27   damages."  *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014); *accord Howard v.*

28   *Murray*, 184 So. 3d 1155, 1168 n.22 (Fla. Dist. Ct. App. 2015).  Negligent misrepresentation has the

same elements, but it requires the absence of "reasonable ground for believing" the misrepresentation to be true, instead of "knowledge of falsity." *Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1252 (2018); *accord McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013).

**Blog posts:**  Plaintiff never alleges the statements in the posts were false, or that Lyft believed them to be false (or lacked a reasonable ground for believing them).  *See, e.g.*, *Muse Brands, LLC v. Gentil*, 2015 WL 4572975, at *4–6 (N.D. Cal. July 29, 2015) (dismissing intentional- and negligent-misrepresentation claims where plaintiff did not allege falsity or a lack of reasonable belief); *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1294 (M.D. Fla. 2010) (same).  Nor does Plaintiff even say she saw either post (or even visited a Lyft blog), much less that she relied on either in taking the April 2019 ride arranged through the Lyft platform.  *See Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1178, 1183–84 (N.D. Cal. 2021) (dismissing intentional- and negligent-misrepresentation claims for lack of reliance); *McGee*, 520 F. App'x at 832 (affirming dismissal of negligent-misrepresentation claims).  (Reliance would be difficult for her to plausibly allege, given the posts were from at least three years before the ride.)  These pleading deficiencies foreclose her claim.

**General statements about safety:**  Plaintiff's allegations regarding the general, unidentified statements about safety are similarly deficient.  The complaint does not say where these statements came from, their context, or even what the statements actually were.  Rather, Plaintiff only asserts that the "safe image" "cultivate[d]" by Lyft "suggests to customers, including Plaintiff, that riding while intoxicated with Lyft is safe."  (Compl. ¶ 94.)

Plaintiff's failure to identify any specific misstatement is fatal to her general-safety-statement claims:  Without identifying a particular alleged misrepresentation, she can prove none of the required elements of the claims.  *See Brown v. Bank of Am., N.A.*, 2018 WL 6164288, at *3 (C.D. Cal. Aug. 2, 2018) (intentional and negligent misrepresentation); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015) (same); *Kremers v. Joseph Glenn Commodities, LLC*, 2012 WL 12855571, at *5 (S.D. Fla. Dec. 4, 2012) (same).  And in all events, vague, general statements about safety of the type to which Plaintiff points cannot support a misrepresentation claim.  Alleged

1    false statements must "pertain to past or existing material facts," *Cansino*, 224 Cal. App. 4th at 1469,

2    and must be "amenable to general verification or falsification," *Ahern v. Apple Inc.*, 411 F. Supp. 3d

3    541, 557 (N.D. Cal. 2019) (citation omitted); *accord Thompson v. Bank of N.Y.*, 862 So. 2d 768,

4    770–71 (Fla. Dist. Ct. App. 2003) (Florida law).  General opinions that safety is, for example,

5    "important" or "a top priority" do not surmount these hurdles.  *See In re Lyft Inc. Sec. Litig.*, 484 F.

6    Supp. 3d 758, 770–71 (N.D. Cal. 2020) ("Lyft's statements regarding its commitment to safety"

7    were not actionable because they "did not state that Lyft guaranteed safety, but instead emphasized

8    its belief in the importance of trust and safety and its commitment to both."); *accord Cork*, 534 F.

9    Supp. 3d at 1177 (statement that community residents experienced "a sense of security" was not

10   actionable misrepresentation, but merely "vague or highly subjective" puffery); *Gibson v. NCL*

11   *(Bah.) Ltd.*, 2012 WL 1952667, at *6 (S.D. Fla. May 30, 2012) ("safe, reliable" statements are "not

12   actionable").

13          For multiple reasons, then, Plaintiff's misrepresentation claims fail.

14   **C.     Plaintiff Has Not Alleged Any Contract or Breach.**

15          Plaintiff alleges, in four spare paragraphs, that she entered into an unspecified contract for

16   "safe and reasonable transportation," and that Lyft breached unspecified terms.  (Compl. ¶¶ 201–04.)

17   This unadorned boilerplate fails to allege a cognizable claim under either California or Florida law.

18          To proceed on a breach-of-contract claim, a plaintiff must plead, among other things, "the

19   specific provisions in the contract creating the obligation the defendant is said to have breached."

20   *Brackett v. Am. Airlines Grp. Inc.*, 2021 WL 3514012, at *2 (N.D. Cal. Aug. 10, 2021) (citation

21   omitted).  Plaintiff has not done so.  *See id.* (dismissing because "Plaintiff fails to identify the

22   contractual terms that were allegedly breached"); *Brush v. Miami Beach Healthcare Grp. Ltd.*,

23   238 F. Supp. 3d 1359, 1367–68 (S.D. Fla. 2017) (dismissing because "Plaintiff has identified no

24   contractual provision").  Nor has she even said whether the allegedly breached contract was written,

25   oral, or implied.  To be sure, she asserts that the "essence" of her contract with Lyft "was the

26   payment of a fee … in exchange for safe and reasonable transportation to her destination."  (Compl.

27   ¶ 202.)  But this does not say anything about the specific provisions breached.  And, in all events,

28   she concedes elsewhere in her complaint that she did not request the Lyft ride at all, foreclosing her

contract claim entirely.  (Compl. ¶ 58.)

## CONCLUSION

For the reasons detailed above, the Court should dismiss the complaint with prejudice.


Dated:  March 8, 2024                    Respectfully submitted,


By: */s/ Warren Metlitzky*
_____

Warren Metlitzky (CA Bar No. 220758)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: wmetlitzky@conmetkane.com

Beth Stewart (*pro hac vice* pending)
David Randall J. Riskin (*pro hac vice* pending)
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, DC 20024
Tel:    (202) 434-5000
Fax:    (202) 434-5029
Email: bstewart@wc.com
Email: driskin@wc.com

*Attorneys for Lyft, Inc.*