1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TABATHA MEANS,

              Plaintiff,

    v.

LYFT, INC.,

              Defendant.

Case No. 24-cv-00177-MMC

**ORDER GRANTING IN PART AND DENYING IN PART LYFT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 28

      Before the Court is defendant Lyft, Inc.'s ("Lyft") "Motion to Dismiss First Amended Complaint," filed April 5, 2024, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. On May 10, 2024, plaintiff Tabitha Means ("Means") filed opposition, to which Lyft, on May 24, 2024, replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

      Means, a resident of Florida, alleges that on April 28, 2019, she was sexually assaulted by her Lyft driver. (See First Amended Complaint ("FAC") ¶¶ 9, 134–143, Doc. No. 22.) Specifically, she alleges that while she was "intoxicated[,] a Lyft ride was requested for her through the Lyft App" (see id. ¶ 134), and, upon arrival at her destination, the driver "began running his hand along her thigh" (see id. ¶ 138). Means further alleges that she "rejected [the driver's] advances," after which he "exited the vehicle and followed [her] inside her residence," where he "forcibly positioned [her] to

---

    [1] By Order filed May 1, 2024, the Court took the matter under submission. (See Doc. No. 43.)

perform oral sex and forced her to do so," then "forcibly placed her on the bed [and] rape[d] her" multiple times. (See id. ¶¶ 138–142.) "Approximately one month after the Lyft driver raped her," Means alleges, she discovered she was pregnant, and, upon the birth of her child, "obtained an administrative order from Florida's Child Support Services to obtain a DNA sample from the Lyft driver," which "revealed the probability of 99.9999999998% that the Lyft driver is the father." (See id. ¶¶ 145, 149.)

According to Means, Lyft "has known of the ongoing sexual assaults and rapes by Lyft drivers upon Lyft passengers" for more than "eight years," and has responded "inadequate[ly]" by "continu[ing] to hire drivers without performing adequate background checks," "allow[ing] culpable drivers to keep driving," and "fail[ing] to adopt and implement reasonable monitoring procedures designed to ensure the safety of its passengers." (See id. ¶¶ 2–3.)

Based on the above allegations, Means asserts the following nine causes of action against Lyft and 50 Doe defendants: (1) "Negligence (Including Negligent Hiring, Retention, Supervision, and Entrustment)," (2) "Misrepresentation," (3) "Negligent Failure to Warn," (4) "Negligent Infliction of Emotional Distress," (5) "Common Carrier's Non-Delegable Duty to Provide Safe Transportation," (6) "Other Non-Delegable Duties to Provide Safe Transportation," (7) "Vicarious Liability for Lyft Driver's Torts (Employee, Retained Control, Apparent Agency, Ratification, California Public Utilities Code)," (8) "Breach of Contract,"[2] and (9) "Strict Product Liability (Failure to Warn and Design Defect)." (See id. 29:24–63:8.)

## LEGAL STANDARD

### A. Failure to State a Claim

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

---

[2] In her opposition, Means "concedes her claim for breach of contract." (See Pl.'s Opp'n. to Def.'s Mot. to Dismiss ("Pl.'s Opp'n.") at 1:28 n.2, Doc. No. 36.)

United States District Court
Northern District of California

under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**B. Pleading Fraud with Particularity**

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," see Fed. R. Civ. P. 9(b), specifically, the "who, what, when, where, and how of the misconduct charged," see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation and citation omitted), and applies to claims based on "misrepresentations" as well as "omissions," see GlenFed Inc. Sec. Litig., 52 F.3d 1541, at 1543, 1548 (9th Cir. 1994).

**C. Choice of Law**

A district court sitting in diversity over state-law claims applies the forum state's choice-of-law principles. See Nelson v. Int'l. Paint Co., 716 F.2d 640, 643 (1983), citing Klaxon

United States District Court
Northern District of California

1  Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). California uses the three-step

2  "governmental interests" approach to determine which jurisdiction's law applies. See

3  Washington Mutual Bank, FA v. Superior Court, 24 Cal. 4th 906, 919–920 (2001). First,

4  "the foreign law proponent must identify the applicable rule of law in each potentially

5  concerned state and must show it materially differs from the law of California." See id.

6  Second, if the laws differ, the Court must "determine what interest, if any, each state has

7  in having its own law applied to the case." See id. at 920. Where both states have an

8  interest in applying their own law, the Court must "select the law of the state whose

9  interests would be 'more impaired' if its law were not applied." See id. Where, however,

10 neither party shows the laws of the two jurisdictions materially differ, California law

11 applies. See Textron Inc. v. Travelers Casualty & Surety Co., 45 Cal.App.5th 733, 755

12 (2020).

**DISCUSSION**

14  By the instant motion, Lyft seeks an order dismissing Means' "negligence-based

15 and products-liability claims" on grounds of untimeliness,[3] and, as to Means' claims for

16 common carrier liability, vicarious liability, negligent hiring, and misrepresentation, an

17 order of dismissal for failure to state a claim. (See Def.'s Mot. at 2:20–3:8.)

18  **A. Statute of Limitations**

19  As alleged in the FAC, the rape occurred in Florida on April 28, 2019 (see FAC ¶

20 152), and the parties contractually agreed to toll the statute of limitations from October

21 25, 2022, through January 10, 2024 (see id. ¶ 153–56), on which date Means filed her

22 initial complaint in the Northern District of California (see id. ¶ 157).

23  To determine which jurisdiction's statute of limitations applies, the Court first

24 assesses whether Florida law "materially differs from the law of California" as to the

25 instant issue. See Washington Mut. Bank, FA, 24 Cal. 4th at 919. Florida's applicable

27  [3] Lyft identifies Means' negligence claims as Claim 1 and Claims 3 to 6, and her
products liability claim as Claim 9. (See Def.'s Mot. to Dismiss ("Def.'s Mot." at 2:20–23,
28 Doc. No. 28.)

4

statute of limitations for negligence and products liability claims is four years. (See Fla.

Stat. §§ 95.11(3)(a), (e) (West 2018).)[4] California's statute of limitations for negligence

and products liability claims is two years (see Cal. Civ. Proc. § 335.1), and ten years for

"any civil action for recovery of damages suffered as a result of sexual assault" (see id.

§ 340.16(a)). Accordingly, there is a material difference in law only if California's statute

of limitations as to sexual assault does not apply to Means' claims against Lyft. See

Gianaculas v. TransWorld Airlines, Inc., 761 F.2d 1391, 1393 (9th Cir.1985) (noting "false

conflict" exists where "laws of two states yield identical results").

The California Civil Procedure Code § 340.16 provides, in relevant part:

"(a) In any civil action for recovery of damages suffered as a result of sexual assault . . . the time for commencement of the action shall be . . . (1) [w]ithin 10 years from the date of the last act . . . of sexual assault against the plaintiff.

. . .

(b)(2) For the purposes of this section, it is not necessary that a criminal prosecution or other proceeding have been brought as a result of sexual assault . . . .This subdivision does not limit the availability of causes of action permitted under subdivision (a), including causes of action against persons or entities other than the alleged person who committed the crime."

See Cal. Code Civ. P. § 340.16(a)–(b).

Lyft argues "as a result of sexual assault" in § 340.16(a) only "applies to claims

seeking damages suffered from intentional criminal sexual acts, but not to claims like

negligent hiring or products liability (which do not allege the enumerated willful criminal

sexual conduct)" (see Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply") at 2:23–

3:1, Doc. No. 40), whereas Means contends § 340.16(b)(2) makes the ten-year statute of

limitations equally applicable to claims against third parties such as Lyft (see Pl.'s Opp'n.

at 7:8–14). As set forth below, the Court agrees with Means.

In particular, Lyft cites no authority suggesting the statutory language should be

[4] In 2023, § 95.11 was amended to establish a two-year statute of limitations (see § 95.11 (West 2023)), which neither party argues applies to Means' claims.

5

United States District Court
Northern District of California

1  limited in the manner argued by Lyft, and the Court is persuaded by the reasoning set

2  forth in cases holding to the contrary. See, e.g. Acevedo v. Exp. Realty, LLC, 2:23-cv-

3  01304-AB-AGR, 2024 WL 650189, at *29 (C.D. Cal. Jan. 29, 2024) (finding "section

4  340.16, by its terms, is not limited to *claims* of sexual assault, but applies to *any action*

5  seeking damages *as a result of* sexual assault, regardless of the legal theory alleged")

6  (emphasis in original); see also Jane Doe #21 (S.H.) v. CFR Ent., Inc., 93 Cal. App.5th

7  1199, 1208 n.9 (2023) (noting § 340.16, as first enacted, covered, "'sexual assault by the

8  defendant against the plaintiff'" and was "enlarged" to cover "defendants who were not

9  alleged to have committed sexual assault") (emphasis omitted).[5]

10  Accordingly, no true conflict existing between Florida and California law, see

11  Gianaculas, 761 F.2d at 1393, as Means' negligence-based and products liability claims

12  are timely in either jurisdiction, California law applies, and consequently, said claims are

13  not subject to dismissal on grounds of untimeliness.

14  **B. Common Carrier Liability**

15  "A common carrier is under a duty to its passengers to take reasonable action to

16  protect them against unreasonable risk of physical harm." See Restatement (Second) of

17  Torts § 314A (Am. L. Inst. 2022). Means seeks to impose liability on Lyft as a common

18  carrier. (See FAC ¶ 205–218.)

19  **1. Material Difference in Law**

20  **a. Florida Law**

21  Florida Statute § 627.748, which regulates "transportation network companies"

22  ("TNC") like Uber and Lyft, provides that "[a] TNC . . . is not a common carrier." See Fla.

23  Stat. § 627.748(2) (2020). Lyft argues said statute "precludes Lyft's possible status as a

24  common carrier" and thus precludes tort liability based on such status. (See Def.'s Mot. at

25

26

27  [5] Lyft's citation to Debbie Reynolds Prof. Rehearsal Studios v. Superior Court, 25 Cal. App. 4th 222 (1994) is misplaced, as the statute there at issue concerned "'[c]hildhood sexual abuse', defined as "'any act committed by the defendant against the plaintiff'". See id. 25 Ca. App. 4th at 230 n.3.

28

14:5–13.)

In response, Means, citing <u>Nazareth v. Herndon Ambulance Serv., Inc.</u>, 467 So. 2d 1076, 1080 (Fla. App. 1985), argues there is a distinction between "whether a company is a common carrier for purposes of the regulatory schemes" and "whether a company owes a common carrier's heightened duty for tort liability purposes." (<u>See</u> Pl.'s Opp'n. at 13:6–9 (emphases omitted).) In <u>Nazareth</u>, the Florida District Court of Appeal held an ambulance was "properly characterized" as a "'common carrier' for purposes of establishing liability for willful torts committed by an employee," despite a statute that governed "Motor Carriers" and excluded ambulances from its requirements. <u>See</u> Fla. Stat. § 323.29(7) (1981). The statute there at issue, however, did not purport to define ambulances, or otherwise categorize them in any manner.[6] Here, by contrast, § 627.748 expressly states a TNC "is not a common carrier." <u>See</u> Fla. Stat. § 627.748(2).[7]

Lastly, Means argues an amendment to § 627.748, in 2020, providing a TNC cannot be held vicariously liable for harm arising out of the operation of a TNC vehicle, demonstrates that "[h]ad the Florida legislature meant the TNC Statute to eliminate all common carrier liability categorically, as Lyft suggests, there would have been no point to a separate sub-section restricting vicarious liability." (<u>See</u> Pl.'s Opp'n. at 15:7–14 (emphasis omitted).) As Lyft notes, however, vicarious liability and common carrier liability are distinct theories. An entity need not be a common carrier to be held

---

[6] According to <u>Nazareth</u>, the "exclusion was apparently designed to exempt certain classes of motor carriers subject to regulation by the Public Service Commission because they were more appropriately regulated by local government agencies." <u>See</u> <u>Nazareth</u>, 467 So.2d 1080.

[7] Means' reliance on <u>Esurance Prop. Cas. & Ins. Co. v. Vergara</u>, No. 20-CV-81754, 2021 WL 2955962, at *5–6 (S.D. Fla. June 29, 2021) and <u>Checker Cab Operators v. Miami-Dade Cnty.</u>, 899 F.3d 908, 913 (11th Cirl. 2018) likewise is unavailing. Although the courts in both cases referred to § 627.748 as regulatory, the issues presented therein were entirely distinct from the issue in the instant case. <u>See</u> <u>Esurance</u>, 2021 WL 2955962, at *6 (finding § 627.748 not relevant to interpretation of insurance policy's exclusion of vehicles "used as a public or livery conveyance"); <u>Checker Cab</u>, 899 F.3d at 913 (holding § 647.748 preempted local ordinance authorizing TNCs to operate without medallion).

1   vicariously liable for the torts of others, and, consequently, § 627.748's elimination of a

2   TNC's enhanced duty of care as a common carrier does not eliminate its vicarious

3   responsibility for the torts of others.

4        Accordingly, the Court finds Means does not have a common carrier claim under

5   Florida law.

6        **b.  California Law**

7        Under California law, "[e]veryone who offers to the public to carry persons,

8   property, or messages . . . is a common carrier of whatever he thus offers to carry." (See

9   Cal. Civ. § 2168.) This definition includes "any entity which holds itself out to the public

10  generally and indifferently to transport goods or persons from place to place for profit,"

11  even if, as a practical matter, not every member of the public can access the means of

12  transportation, see Squaw Valley Ski Corp. v. Superior Court, 2 Cal. App. 4th 1499,

13  1508–09 (1992) (finding ski resort chair lift was common carrier despite accessibility only

14  to fee-paying members), and courts to have considered the status of TNCs under

15  California law hold they qualify as common carriers. See, e.g. Doe, 184 F.Supp.3d 774,

16  787 (N.D. Cal. 2016) (finding Uber was common carrier under California law because

17  "services are available to the general public" at "standardized fees for car rides"); Doe v.

18  Uber Techs., 19-cv-03310-JSC, 2019 WL 6251189, at *6 (N.D. Cal. Nov. 22, 2019)

19  (holding "Uber's status as an app-based transportation network does not preclude it as a

20  matter of law from being held liable as a common carrier"). Lyft cites no authority to the

21  contrary.

22       Accordingly, the Court finds a material difference exists between Florida and

23  California law on the issue of Lyft's common carrier status.

24       **2.  Interest in Applying Law**

25       Having ascertained that Florida and California law differ on Means' common

26  carrier claim, the Court next considers each state's interest in applying its' own law. See

27  Washington Mut. Bank, 24 Cal. 4th at 920. A true conflict exists only where each

28  jurisdiction has a 'real and legitimate interest in having its [laws] applied under the

United States District Court
Northern District of California

circumstances presented [by the case]." <u>See</u> <u>Cassirer v. Thyssen-Bornemisza Collection</u> <u>Found.</u>, 89 F.4th 1226, 1235–36 (9th Cir. 2024), <u>citing</u> <u>McCann v. Foster Wheeler LLC</u>, 48 Cal. 4th 68, 93 (2010).

Here, the conduct on which Means' claims are based occurred in Florida (<u>see</u> FAC ¶ 9), and the California Supreme Court has itself recognized a jurisdiction's interest "in regulating conduct that occurs within its borders," as well as "in being able to assure . . . commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available … in the event they are faced with litigation." <u>See</u> <u>McCann, 48 Cal. 4th at 97-98.</u>

Although Means argues "Florida has no legitimate interest in limiting the potential recovery of a Florida tort victim, except perhaps as the necessary cost of protecting a Florida defendant" (<u>see</u> Pl.'s Opp'n. at 17:27–28 (emphasis omitted)), Means cites no authority in support thereof, and, indeed, the California Supreme Court has held that "when a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises, . . . the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state." <u>See</u> <u>McCann</u>, 48 Cal. 4th at 91–92. Accordingly, the Court finds Florida has a "real and legitimate interest" in applying its law.

Turning next to California's interest, although Means argues California has an interest in "enlarging the scope of a California employer's vicarious liability to prevent future injuries and fairly allocate loss" (<u>see</u> Pl.'s Opp'n. at 17:8–11), her sole citation in support thereof, <u>Hinman v. Westinghouse Elec. Co.</u>, 2 Cal.3d 956, 960 (1970), wherein the California Supreme Court, in discussing the policies underlying vicarious liability, implicitly recognized California's interest in holding an employer responsible for the negligence of its employees, did not do so in the context of the circumstances presented here. As the California Court of Appeal has noted, although California has a "theoretical

1  interest" in applying its law where a California defendant has caused an injury, that

2  interest becomes "hypothetical" when "the injured persons are not California residents

3  and were not injured in California." See Chen v. Los Angeles Truck Centers, LLC, 42 Cal.

4  App. 5th 488, 498 (2019) (concluding California had "more hypothetical than real" interest

5  in applying its products liability law where bus distributed by California defendant was

6  involved in roll-over accident in Arizona, injuring non-California resident).

7       Given the absence of a "real and legitimate interest" on the part of California, the

8  Court finds there is no true conflict between Florida and California law, and consequently,

9  applies Florida law to Means' claim, under which Lyft is not a common carrier as a matter

10  of law.

11       Accordingly, Means' claim for common carrier liability is subject to dismissal for

12  failure to state a claim.

13  **C. Vicarious Liability**

14       Lyft next seeks dismissal of Means' vicarious liability claim, arguing she has failed

15  to state a claim under two distinct theories: respondeat superior and agency.[8] Lyft argues

16  Florida law applies to the claim and would preclude liability under either theory, while

17  Means argues California law applies and would impose liability under either theory.

18       **1. Material Difference in Law**

19            **a. Florida Law**

20                 **(i)    Respondeat Superior**

21       The parties agree, and the Court finds, Florida law would preclude Lyft's vicarious

22  liability based on respondeat superior. (See Def.'s Mot. at 14:16–23; Pl.'s Opp'n at

23

---

24       [8] In the FAC, Means also advances a theory of vicarious liability under California
Public Utilities Code § 535 (see FAC ¶¶ 251–255) but has not responded to Lyft's

25  argument that she fails to state a claim thereunder. Under these circumstances, the Court
finds Means has abandoned a claim predicated on such theory. See Carvalho v. Equifax

26  Info. Servs., LLC, 629 F.3d 876, 888 (9th Cir. 2010) (holding "plaintiff who makes a claim
in his complaint, but fails to raise the issue in response to a defendant's motion to

27  dismiss, has effectively abandoned his claim") (internal quotation, citation, and alterations
omitted).

28

United States District Court
Northern District of California

16:25–28.) See Goss v. Human Servs. Assoc., Inc., 79 So.3d 127, 132 (Fla. Dist. Ct. App. 2012) (noting "[s]exual assaults and batteries committed by employees are generally held to be outside the scope of an employee's employment, and, therefore, insufficient to impose vicarious liability on the employer"; requiring act "in furtherance of [perpetrator's] employment" (internal quotation and citation omitted)).

### (ii)     Apparent Agency

Under Florida law, "[t]he doctrine of apparent agency stems from the policy that a principal should be estopped to deny the authority of an agent when the principal permitted an appearance of authority in the agent, and, in so doing, justified a third party's reliance upon that appearance of authority as if it were actually conferred upon the agent." See Gradia v. Baptist Hospital, 345 So.3d 385, 389 (Fla. Dist. Ct. App. 2022) (internal quotation and citation omitted) (finding, under agency theory, hospital liable for negligent care by doctors who were independent contractors rather than employees). "To show apparent agency, a plaintiff must establish (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." See id. (internal quotation and citation omitted).

Here, Lyft does not contend Means has failed to meet any of the above-listed requirements. For purposes of holding an asserted principal liable, however, application of the doctrine of apparent agency does no more than put the apparent agent in the same legal shoes as an actual agent, and, as Lyft points out, "'[s]exual assaults and batteries' are outside the scope of any agency relationship and 'therefore, insufficient to impose vicarious liability'" under Florida law. (See Def.'s Mot. at 15:23–27 quoting Z.M.L. v. D.R. Horton, 8:20-cv-0672-KKM-SPF, 2021 WL 3501099, at *6 (M.D. Fl. June 11, 2021).)[9]

---

[9] The "two exceptions" are where the assault "further[s] a purpose or interest, however excessive or misguided, of the employer" or the perpetrator "was aided by the existence of the agency relationship." See Z.M.L., 2021 WL 3501099, at *6. Means has pleaded no facts to support a finding that either such exception pertains here.

1    The finding of vicarious liability in <u>Moro-Romero v. Prudential-Bach Secs., Inc.</u>,

2    1991 WL 494175, at *2 (S.D. Fl. Aug. 26, 1991), on which Means relies, is not to the

3    contrary, as the facts therein did not involve an assault of any kind, but, rather, an

4    account manager's fraud.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Goss</u>, 79 So.3d at 132 (finding operator of

5    group care facility not vicariously liable where employee sexually assaulted child in group

6    home at which employee worked).

7    Accordingly, the Court finds Lyft, under Florida law, is not vicariously liable to

8    plaintiff on a theory of either respondeat superior or apparent agency.

9    **b. California Law**

10   **(i)     Respondeat Superior:**

11   In California, the doctrine of respondeat superior permits "an employer [to] be held

12   vicariously liable for torts committed by an employee" when the plaintiff "prove[s] that the

13   employee's tortious conduct was committed within the scope of employment." <u>See</u> <u>Mary</u>

14   <u>M v. City of Los Angeles</u>, 54 Cal.3d 202, 208 (1991). Vicarious liability attaches where,

15   "in the context of the particular enterprise[,] an employee's conduct is not so unusual or

16   startling that it would seem unfair to include the loss resulting from it among other costs

17   of the employer's business." <u>See</u> <u>id.</u> (internal quotation and citation omitted). "Ordinarily,

18   the determination whether an employee has acted within the scope of employment

19   presents a question of fact," i.e. "one properly left for the jury to decide," unless "the facts

20   are undisputed and no conflicting inferences are possible." <u>See</u> <u>id.</u> at 213.

21   Here, Lyft contends sexual assault is, in essence, categorically outside an

22   employee's scope of employment. The Ninth Circuit, however, in <u>Xue Lu v. Powell</u>, 621

23   F.3d 944 (9th Cir. 2010), found a sexual assault committed by an asylum officer was

24   within the scope of employment under California law. <u>See</u> <u>id.</u> at 949. Although, as Lyft

25   points out, the California Court of Appeal, in <u>Z.V. v. County of Riverside</u>, 238 Cal.App.4th

26   889 (2015), disagreed with the Ninth Circuit's analysis in <u>Xue Lu</u>, <u>see</u> <u>Z.V.</u>, 238 Cal.App.

27   4th at 891, 897—99 (holding social worker's sexual assault of minor in foster care not

28   within scope of employment; finding exception to general rule excluding sexual assault

United States District Court
Northern District of California

1  limited to "the narrow context of an arrest performed by a uniformed, armed police officer

2  in the normal course of that officer's duties"), district courts, in the absence of a contrary

3  ruling by the highest state court, are "bound" by the Ninth Circuit's decision, see Sharma

4  v. BMW of North America, No. 13-cv-2274-MMC, 2016 WL 4395470, at *5 (N.D. Cal.

5  Aug. 18, 2016).The Court thus finds, under California law, Means is not precluded from

6  proceeding on her claim of vicarious liability as predicated on a theory of respondeat

7  superior. See, e.g. Doe v. Uber Techs., 184 F.Supp.3d 774, 785 (N.D. Cal. 2016)

8  (declining to find Uber driver's sexual assault "is always outside the scope of

9  employment"; noting "[t]he California Supreme Court has left this question open").

10  　　　　Accordingly, the Court finds Florida and California law diverge on the issue of

11  respondeat superior liability.

12  　　　　　　　　**(ii)　　Apparent Agency**

13  　　　　Apparent agency in California, denominated "ostensible agency," arises "when the

14  principal intentionally, or by want of ordinary care, causes a third person to believe

15  another to be his agent who is not really employed by him." See Cal. Civ. Code § 2300.

16  Ostensible agency has three requirements: (1) "[t]he person dealing with the agent must

17  do so with belief in the agent's authority and this belief must be a reasonable one," (2)

18  "such belief must be generated by some act or neglect of the principal," and (3) "the third

19  person relying on the agent's authority must not be guilty of negligence." See Kaplan v.

20  Coldwell Banker Residential Aff., Inc., 59 Cal. App.4th 741, 747 (1997).

21  　　　　Lyft contends California "applies a scope-of-employment limitation to apparent

22  authority" (see Def.'s Reply at 12:23–13:1). Even assuming Lyft is correct, however, the

23  Ninth Circuit, as discussed above, has found sexual assaults, under California law, are

24  not necessarily outside the scope of employment. See Xue Lu, 621 F.3d at 949.

25  　　　　Accordingly, the Court finds Florida and California law diverge on the issue of

26  apparent agency.

27  //

28  //

United States District Court
Northern District of California

**2.  Interest in Applying Law**

As discussed above (see supra Part B.2), Means has failed to establish California has a real and legitimate interest in applying its law to her common carrier claims, and, as her vicarious liability claims are based on the same conduct, the Court again so finds.

Accordingly, the Court, applying Florida law, finds Means' claim for relief on a theory of vicarious liability is subject to dismissal.

**D.  Negligence**

Lyft, as noted, seeks dismissal of Means' claim for negligent hiring, supervision, retention, and entrustment. (See FAC ¶¶ 166–171; Def.'s Mot. at 16:9.) In support thereof, Lyft argues, and Means does not dispute, that Florida law and California law are identical with regard to the negligence claim, and, consequently, the Court applies California law. See Textron Inc., 45 Cal.App.5th at 755 (noting California will "apply its own rules of decision" where party fails to show laws are "materially differ[ent]").

In California, "an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness before hiring him." See Juarez v. Boy Scouts of Am., Inc., 81 Cal.App.4th 377, 395 (2000), rev'd. on other grounds by Brown v. USA Taekwondo, 11 Cal.5th 204 (2021). Where, however, "there [is] nothing in [the employee's] background and nothing that [is] made known to [the employer] during [the employee's] tenure . . . that could be deemed a specific warning" of the employee's conduct, liability cannot attach. See Juarez, 81 Cal. App.4th at 397; see, e.g. Doe v. Uber Techs., 184 F.Supp.3d at 778–779 (dismissing claim against TNC for negligent hiring where plaintiff did "not allege anything that existed in [driver's] background that . . . should have prevented [its] approval").

Here, Means "acknowledges that she does not have information . . . that would allow her to allege the specific 'red flags' Lyft disregarded in the process of hiring the driver who assaulted her." (See Pl.'s Opp'n. at 23:3–15.)

Accordingly, Means' negligence claim, to the extent it is based on the negligent

14

1    hiring, supervision, retention, and entrustment of Means' assailant, is subject to

2    dismissal.[10]

3    **E. Misrepresentation**

4        Lastly, Means seeks to hold Lyft liable for "affirmative misrepresentation and

5    misrepresentation by omission" (See FAC ¶ 172), and in response to the instant motion,

6    does not dispute Lyft's assertion that Florida and California law are identical as to those

7    claims. The Court thus applies California law. See Textron Inc., 45 Cal.App.5th at 755.

8    Additionally, the Court applies the requirements of Rule 9(b), under which, as set forth

9    above, fraud claims "must [be] state[d] with particularity," including "the circumstances

10   constituting fraud or mistake." See Fed. R. Civ. P. 9(b).

11   **1. Affirmative Misrepresentation**

12       Under California law, to plead a claim for affirmative misrepresentation, a plaintiff

13   must allege "(1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance

14   on the misrepresentation, (4) justifiable reliance on the misrepresentation, and

15   (5) resulting damages." See Cansino v. Bank of Am., 224 Cal. App. 4th 1462, 1469

16   (2014). Here, Means concedes she "has not identified statements that rise to the level of

17   specific assertions," but argues the California Supreme Court's holing in In re Tobacco II

18   Cases, 46 Cal.4th 298, 328 (2009), nonetheless permits her to bring a claim for

19   affirmative misrepresentation. (See Pl.'s Opp'n. at 23:20–24:6.)

20       In Tobacco II, the California Supreme Court held a "plaintiff is not required to plead

21   with an unrealistic degree of specificity that [he/she] relied on particular advertisements or

22   statements" where such plaintiff has "allege[d] exposure to a long-term advertising

23   campaign." See id. (permitting claim to proceed where plaintiffs alleged "a decades-long

24

25       [10] To the extent Means appears to base her negligence claim on Lyft's failure to
26   train and monitor its drivers as a group (see Pl.'s Opp'n. at 22:27-23:1), such claim is not
     subject to dismissal, as Means has alleged facts to support a finding that Lyft had
27   knowledge of numerous past sexual assaults (see FAC ¶¶ 111, 123–124), and has also
     alleged facts to support a finding that Lyft failed to adopt available procedures to reduce
28   that risk (see id. ¶ 110).

United States District Court
Northern District of California

1   campaign of deceptive advertising and misleading statements"). The exception, however,

2   is a "narrow" one, see Brown v. Madison Reed, Inc., No. 21-cv-01233-WHO, 2021 WL

3   3861457, at *11 (N.D. Cal. Aug. 30, 2021), and a plaintiff "cannot rely on Tobacco II

4   unless [he/she] ha[s] alleged an advertising campaign that is similarly extensive and

5   lengthy." See Bronson v. Johnson & Johnson, Inc., No. C 12-04184 CRB, 2013 WL

6   1629191, at *3 (N.D. Cal. Aug. 16, 2013) (collecting cases).

7       Here, Means has not alleged a course of conduct that would bring her claim within

8   the scope of Tobacco II's holding. Compare FAC ¶¶ 114, 122 (describing two blog posts),

9   with Tobacco II, 46 Cal. 4th at 306, 328 (describing "extensive" advertising campaign).

10  Consequently, Means fails to plead an actionable affirmative misrepresentation.

11      **2. Misrepresentation By Omission**

12      The elements of an action for fraud and deceit based on omission are: "(1) the

13  defendant must have concealed or suppressed a material fact, (2) the defendant must

14  have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have

15  intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4)

16  the plaintiff must have been unaware of the fact and would not have acted as he did if he

17  had known of the concealed or suppressed fact, and (5) as a result of the concealment or

18  suppression of the fact, the plaintiff must have sustained damage." See Tenet

19  Healthsystems Desert, Inc. v. Blue Cross of California, 245 Cal. App. 4th 821, 844

20  (2016). With respect to the second of the above-listed elements, even if a "fiduciary

21  relationship is not involved, a non-disclosure claim arises when the defendant makes

22  representations but fails to disclose additional facts which materially qualify the facts

23  disclosed, or which render the disclosure likely to mislead." See Roddenberry v.

24  Roddenberry, 44 Cal. App. 4th 634, 666 (1996) (finding, where, under divorce

25  agreement, plaintiff ex-wife was entitled to fifty percent of joint venture's proceeds,

26  defendant ex-husband's LLC "misrepresented or at least concealed" its "remit[ance] [of]

27  only one-third rather than one-half" of proceeds).

28      Here, Lyft argues Means' misrepresentation-by-omission claim fails because her

United States District Court
Northern District of California

allegations that Lyft did not disclose it "prioritized growth and driver supply over passenger safety," and failed to "adequately protect passengers against sexual assault or harassment committed by drivers" are too vague. (See Def.'s Mot. at 21:3–15 citing FAC ¶¶ 177–78.) In response, Means identifies two allegations of misrepresentation not addressed by Lyft's motion, namely, that "Lyft does not disclose its policies or procedures on dealing with sexual assault by its drivers," and "conceal[ed] the truth about its failure to adequately employ measures to ensure the safety of its passengers." (See Pl.'s Opp'n. at 24:24–25:2, citing FAC ¶¶ 129, 165.) Even if Means has sufficiently alleged facts she asserts were not disclosed, however (see, e.g., FAC ¶¶ 123–24), she has not identified with the requisite particularity (see Fed. R. Civ. P. 9(b)), any statement from which any such omission was made and on which she relied.[11] Consequently, Means fails to plead an actionable misrepresentation by omission.[12]

### 3. Conclusion: Misrepresentation

The Court, applying California law, finds Means' claim for misrepresentation is subject to dismissal.

### CONCLUSION

For the reasons stated above, Lyft's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. to the extent Lyft seeks dismissal of Means' negligence and product liability claims on grounds of untimeliness, the motion is DENIED;

2. to the extent Lyft seeks dismissal of Means' common carrier claim, the motion is GRANTED;

3. to the extent Lyft seeks dismissal of Means' vicarious liability claim, the motion

---

[11] Indeed, it is not clear from the FAC whether Means was involved in the decision to use Lyft on the date of the alleged assault, or whether the decision was made solely by someone else. (See FAC ¶ 134.)

[12] The FAC includes no facts supporting a finding that Lyft has a fiduciary relationship with its riders, nor any facts otherwise supporting a duty to disclose.

1     is GRANTED;

2   4.   to the extent Lyft seeks dismissal of Means' claim for negligent hiring,

3        entrustment, supervision, and retention of her assailant, the motion is

4        GRANTED;

5   5.   to the extent Lyft seeks dismissal of Means' misrepresentation claim, the

6        motion is GRANTED.

7        As Means may be able to cure the above-discussed deficiencies, she is hereby

8   afforded leave to amend. Means' Second Amended Complaint, if any, shall be filed no

9   later than July 12, 2024.

10

11       **IT IS SO ORDERED.**

12

13  Dated: June 13, 2024

14                                            MAXINE M. CHESNEY
                                              United States District Judge